628 So.2d 283 (1993)
A. Emmett BARNES, IV
v.
A CONFIDENTIAL PARTY.
No. 91-CA-0092.
Supreme Court of Mississippi.
November 24, 1993.
*284 William O. Luckett, Jr., Stephen A. Brandon, Patricia W. Burchell, Luckett Law Firm, Clarksdale, for appellant.
James R. Hall, Jr., Robertson M. Leatherman, Jr., Memphis, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
This appeal arises from a deposition taken in conjunction with a divorce pending in Georgia between A. Emmett Barnes IV (Emmett) and Leslie Lamar Barnes. Deponent C.C. was a resident of Coahoma County, Mississippi, and the deposition was taken there. C.C. refused to answer certain questions posed to him by counsel for Emmett, and the deposition was terminated. Emmett filed a Motion to Compel Discovery in the Coahoma County Circuit Court, and C.C. filed a Motion for Protective Order, To Place Documents under Seal, and Request for Attorney's Fees and Expenses. The court denied Emmett's motion, and granted C.C.'s motion. Emmett's Motion for Reconsideration of the court's order was denied, and he appeals, citing the following errors:
I. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN DENYING EMMETT BARNES' MOTION TO COMPEL.
II. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN GRANTING C.C.'S MOTION FOR PROTECTIVE ORDER.
III. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN DENYING EMMETT BARNES' REQUEST FOR ATTORNEY'S FEES AND EXPENSES AND GRANTING C.C.'S REQUEST *285 FOR ATTORNEY'S FEES AND EXPENSES.
IV. WHETHER C.C.'S DEPOSITION, THE SUBSTANCE OF WHICH IS MATERIAL TO THIS APPEAL AND ALREADY A MATTER OF PUBLIC RECORD, SHOULD BE PLACED UNDER SEAL.
Finding that the circuit judge correctly granted C.C.'s motion, and denied Emmett's motion, we affirm.

A.

FACTS AND PROCEDURAL HISTORY
A. Emmett Barnes and Leslie Lamar Barnes were married in June 1985 and separated in November 1987. Emmett filed for divorce in February 1988 in the Superior Court of Fulton County, Georgia. Pursuant to the divorce, Emmett sought to depose C.C., a resident of Clarksdale in Coahoma County, Mississippi.[1]
He obtained an order dated January 30, 1989 in the Fulton County Superior Court, appointing a Commissioner to take C.C.'s deposition in Mississippi. The order provided that "all procedure in connection with the deposition" would be in accordance with §§ 26 and 30 of the Georgia Civil Practice Act (O.C.G.A. § 9-11-26, and § 9-11-30).[2] The order further provided that the deposition would be placed under seal.
A Notice to Take Deposition was filed in the Fulton County Superior Court on February 27, 1989, stating that C.C. would be deposed on March 3, 1989 in Clarksdale, Mississippi, and that he would be "examined under the provisions of O.C.G.A. § 24-9-81 ... as if he had testified in his own behalf, and was being cross-examined, with full right to examine and the privilege of impeachment."[3] A subpoena was issued on March 1, 1989 by the Coahoma County Circuit Court, commanding C.C. to appear at the Luckett Law Firm offices in Clarksdale on March 3.
C.C. appeared at the appointed time and place on March 3, accompanied by counsel. Also present were counsel for Emmett Barnes and for Leslie Barnes. Emmett's counsel questioned C.C. about his relationship with Leslie, which had lasted for several years while the two were in college at Ole Miss, and had ended just prior to Emmett and Leslie's courtship. He also questioned C.C. about a chance meeting which had taken place between Leslie and C.C. in Aspen, Colorado, in December of 1986. According to C.C., the two drank wine in a bar, discussing friends and "old times at school."
During the deposition, C.C. declined to answer a certain question, invoking a privilege afforded to witnesses under the Official Code of Georgia Annotated § 24-9-27. The statute states in relevant part:
Privilege of witnesses
(a) No party or witness shall be required to testify as to any matter which may criminate or tend to criminate himself or which shall tend to bring infamy, disgrace, or public contempt upon himself or any member of his family.
Invoking this privilege, C.C. also declined to answer certain other questions of an intimate, private, and personal nature.
On May 5, 1989, Emmett filed a Motion to Compel discovery pursuant to M.R.C.P. 37. The motion sought an order requiring C.C. to respond to the questions which he had declined to answer. Appended to the motion were excerpts from C.C.'s deposition, including the questions posed to him by Emmett's counsel. The motion contended that the Georgia privilege asserted by C.C. was not available to him in these proceedings.
On May 26, 1989, C.C. filed a Motion for Protective Order, To Place Documents Under Seal, and Request for Attorneys' Fees and Expenses in the Coahoma County Circuit Court. C.C. argued that he was entitled to assert the Georgia privilege, and that Emmett's Motion to Compel had violated a January *286 4, 1989, Order of the Fulton County Superior Court by making portions of C.C.'s deposition a matter of public record.[4] On June 9, 1989, C.C. supplemented his Motion with a copy of an Order issued by the Fulton County Superior Court on May 31, 1989. This Order denied Emmett's Motion to compel Leslie to testify concerning her relationship with C.C. The court stated that it would not order Leslie to testify regarding this matter, or any conversation during her marriage concerning it, as she had asserted the privilege afforded by O.C.G.A. § 24-9-27, and that it would draw the most negative adverse inference allowed by law from her invocation of the privilege.
On June 26, 1989, the Coahoma County Circuit Court denied Emmett's Motion to Compel Discovery, and granted C.C.'s Motion for Protective Order, to Place Documents Under Seal, and Request for Attorneys' Fees and Expenses. Pursuant to M.R.C.P. 37, the court held that C.C. was entitled to recover his expenses in opposing Emmett's Motion to Compel and in bringing his own Motion. Emmett and his attorneys, the Luckett Law Firm, P.A., were ordered to pay C.C.'s attorneys the amount of $4279.00 in fees, plus $215.39 in expenses. The court also held that all other costs in the case were to be assessed against Emmett.
Emmett Barnes, W.O. Luckett, and the Luckett Law Firm, P.A. filed a Motion for Reconsideration on July 5, 1989. On July 18, 1989, Judge Pearson issued an Order Taking Under Advisement the Motion for Reconsideration, tolling the time for filing an appeal of the June 26, 1989, Order. By order of the Coahoma County Chancery Court dated October 18, 1989, a hearing was set for November 16, 1989. On December 27, 1990, Judge Pearson denied the Motion for Reconsideration, holding in part:
1) C.C. should have been protected from annoyance, embarrassment, oppression, undue burden and expense in this matter, and it was therefore necessary for this Court to issue a protective order under Rule 26(d) of the Mississippi Rules of Civil Procedure protecting him from further discovery and placing documents filed in this matter under seal;
2) That the motion of Emmett Barnes to compel discovery was not well taken, should have been denied and was not substantially justified and that an award of expenses to C.C. was just;
3) The motion of C.C. for a protective order to place documents under seal and his request for attorney's fees and expenses was well taken and should have been granted;
4) That $4,279.00 in attorney's fees and costs in the amount of $215.39 are reasonable.
Emmett filed his appeal to this Court on January 15, 1991.[5] It may be noted that a Final Judgment and Decree was issued in the divorce action, A. Emmett Barnes, IV. v. Leslie Lamar Barnes, File No. D-53240 in the Fulton County Superior Court on August 29, 1989.

B.

Motion to Compel

I. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN DENYING EMMETT BARNES' MOTION TO COMPEL.
Emmett notes that C.C. is a citizen of Mississippi, not Georgia, and that C.C. did not live in Georgia while dating Leslie Barnes. He further notes that C.C.'s deposition was taken in Mississippi, by authority of a Mississippi court, concerning events which had occurred in Mississippi. Therefore, Emmett argues, C.C.'s deposition was "taken pursuant to the Mississippi Rules of Civil Procedure and is governed by those Rules and by Mississippi case law." Emmett contends that as a result, the privilege provided *287 by Georgia law (O.C.G.A. § 24-9-27) was not available to C.C. in his deposition.
Emmett cites M.R.C.P. 26, which provides in part that "(p)arties may obtain discovery regarding any matter not privileged, which is relevant to the issues raised by the claims or defenses of any party." He contends that because his deposition, and that of Dr. Gerson, revealed that Leslie's relationship with C.C. was "instrumental" in her decision to separate from her husband and return to Mississippi, the testimony of C.C. was relevant and material to the divorce proceedings. Emmett argues that because the relationship between Leslie and C.C. was relevant, it was discoverable; he further argues that under M.R.C.P. 37, he was entitled to move for an order compelling C.C. to answer the questions to which he had asserted the Georgia privilege.
Emmett notes that Mississippi law, while not providing a privilege analogous to that afforded by O.C.G.A. § 24-9-27, does afford protection against self-incrimination under Section 26 of the Mississippi Constitution. He contends that the privilege against self-incrimination, particularly this Court's application of the privilege in civil actions, is the proper law to apply to the question of C.C.'s refusal to answer deposition queries.
C.C. argues that the Georgia court's Order Appointing Commissioner "served as the foundation for the deposition, without which the deposition could not have taken place." The Order specified the terms under which the deposition would be taken, including that Georgia procedural rules would apply. C.C. notes that the Georgia discovery rule O.C.G.A. § 9-11-26, analogous to M.R.C.P. 26, states that "parties may obtain discovery into any matter, not privileged, which is relevant to the subject matter involved in the pending action." (emphasis added). He contends that the questions posed to him by Emmett's counsel at the deposition were clearly subject to privilege under Georgia law, and therefore outside the scope of O.C.G.A. § 9-11-26.
Emmett's contention that C.C.'s deposition was taken pursuant to Mississippi Rules of Civil Procedure, and was therefore subject to those rules and to Mississippi case law, is simply incorrect. The Georgia court order appointing a commissioner in Mississippi provided that all procedure in connection with C.C.'s deposition would be in accordance with the Georgia Civil Practice Act. True, the order did not specify that Georgia caselaw would govern. However, there was certainly no suggestion that the court intended Mississippi law of any kind, including caselaw, to apply.
This Court has not yet addressed the precise question presented by this appeal: whether, in a deposition taken in Mississippi for use in an out-of-state case, the party being deposed may assert a privilege provided by the other state's law, but not available under Mississippi law. However, our opinion in Electric Reduction Company of Canada, Ltd. v. Crane, 239 Miss. 18, 120 So.2d 765 (Miss. 1960), suggests an answer. In Crane, a Mississippi resident was deposed under commission of the Lowndes County Circuit Court, honoring letters rogatory issued by the Supreme Court of Ontario pursuant to a case there pending. Deponent W.H. McClanahan appeared as summoned, but refused to answer certain questions about trade secrets concerning which he had entered into a non-disclosure agreement with a third party. We upheld the power of the circuit court to honor letters rogatory by commissioning the examination of a witness. We also upheld the witness' right to assert a legal privilege, to refuse to testify, and to have the court evaluate the claim of privilege before being compelled to answer. The Court cited with approval a section of C.J.S. on depositions:
Scope of Examination
* * * * * *

In examinations conducted for use in a cause pending in another jurisdiction, matters pertaining to the competency or admissibility of the evidence sought to be elicited will be left for the determination of the foreign court. However, under this rule a court may not completely renounce its control of a proceeding being conducted under its process, and testimony sought to be elicited must not appear to be entirely irrelevant, and a confidential relationship *288 may be protected on the grounds of public policy.
26A C.J.S. § 67, at 390, cited in Electric Reduction Co. of Canada v. Crane, 239 Miss. at 30, 120 So.2d at 765 (1960) (emphasis added). While suggesting that the court in which state the deposition is being taken might restrict discovery, even where the foreign court would allow it, the thrust of this rule is that the foreign court's law and discovery practices are paramount. Applied to the case at bar, such a rule directs that Georgia's law and discovery practices control the deposition of a Mississippi witness, where the deposition is to be used in Georgia proceedings.
A New York divorce case, Jarvis v. Jarvis, 141 Misc.2d 404, 533 N.Y.S.2d 207 (Sup. 1988), addressed facts similar to those of the case at bar. While the couple's divorce was pending in the Court of Common Pleas in Bucks County, Pennsylvania, the husband sought to depose the wife's New York-licensed attorney. The deposition was taken in New York pursuant to a commission issued by the Bucks County court. Some questions posed by the husband concerned the attorney's preparation of a prenuptial agreement, which the wife was seeking to enforce in the Pennsylvania court. The attorney refused to answer such questions, invoking the attorney-client privilege, and the husband petitioned the New York court to compel the attorney to answer. The court stated:
When an examination before trial is conducted pursuant to a commission issued by a foreign court, logic requires that all issues regarding the propriety of questions put to the witness be referred to the trial court. The rules governing disclosure differ from those concerning admissibility, and questions regarding admissibility are ultimately the province of the trial court. Even questions with respect to the scope of discovery are more appropriately determined under the law of the jurisdiction where the matter is ultimately to be tried. In this regard, Matter of Shea Gould Climenko & Casey, 98 Misc.2d 484, 414 N.Y.S.2d 80 is singularly on point. There, respondent resisted disclosure of certain documents on the ground of attorney-client privilege. The court declined to decide the issue reasoning that its ruling would be academic. "Since the trial will be held in Pennsylvania, the admissibility of evidence and rulings in connection therewith (including the asserted claim of privilege) will all be determined at trial by the Pennsylvania court. Under these circumstances the issue should be determined in accordance with the applicable rules of evidence in Pennsylvania, and the law of Pennsylvania governing attorney-client privilege. The issue should also be decided upon consideration of the Pennsylvania law applicable to the extent of discovery. The New York law concerning those matters is irrelevant to the conduct and management of the Pennsylvania trial." The opinion further states that any application to restrict the limits of disclosure should be directed to the Pennsylvania court.
Jarvis v. Jarvis, 533 N.Y.S.2d at 210. (emphasis added; cites omitted). Under such analysis, the foreign state's substantive law of privilege, as well as its procedural rules, should be applied to depositions taken under commission in another state. Accordingly, in the case at bar, we hold that Georgia's substantive law of privilege, including the privilege under O.S.G.A. § 24-9-27, should govern.
Because the Barnes' divorce proceedings have been completed, the question of whether C.C. may invoke the Georgia privilege cannot, as this Court suggested in Crane, be "left for the determination of the foreign court." However, the Fulton County Court's ruling on Leslie's invocation of the privilege provides instruction. On May 31, 1989, an order was issued in the Superior Court denying Emmett's Motion to Compel. It stated in part:
With regard to the Motion filed as the result of the Defendant's (Leslie) refusal to testify concerning a relationship with a Mr. C.C., as well as any conversations with her husband during the marriage concerning this subject, the Court will not order the Defendant to testify regarding these matters as to which she has asserted the privilege afforded by O.C.G.A. § 24-9-27(a), *289 but if she refuses to answer these questions in another deposition, she will not be permitted to change her answers to these same questions if asked, at the time of the trial in this matter. In addition, this Court will draw the most negative adverse inference allowed by law from the invocation of this privilege.
Surely, there can be no reason to compel C.C., a nonparty, to testify as to matters concerning which the court has held that Leslie, defendant in the divorce, need not testify. Moreover, it would defy logic, and offend principles of comity, to allow Emmett to extract more information from C.C. than he was permitted to extract from his wife, simply because C.C. could be found in another state.
Finally, our choice of law principles also direct that C.C. is entitled to invoke the Georgia privilege. This Court modified its choice of law rules in 1968 by adopting the "center of gravity test" in Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss. 1968) and Mitchell v. Craft, 211 So.2d 509, 512 (Miss. 1968). Where a question arises as to whether the substantive rules of decision should be Mississippi's or those of another state, the center of gravity test directs a determination of which state has the most substantial contacts with the parties and the subject matter of the action. See Crowe v. Smith, 603 So.2d 301, 307 (Miss. 1992); Newman v. Newman, 558 So.2d 821, 823 (Miss. 1990).
In this case, Georgia's contacts are numerous and weighty. Emmett and Leslie Barnes had established their marital home in Georgia. Their marital difficulties occurred while they were residing in Georgia. Their divorce action was filed in the Fulton County, Georgia Superior Court, and that Court retained jurisdiction at all times. The property to be divided pursuant to the Barnes' divorce was located in Georgia. On the other hand, Mississippi's most significant contacts with the case are that C.C., a nonparty witness, resided in Clarksdale, and that his deposition was taken there. Perhaps also to be considered is that Leslie and Emmett attended college in Mississippi, and Leslie returned to her parents' home in Oxford after she and Emmett separated. Finally, Emmett suggests another contact in that C.C.'s deposition "concern(ed) events which had occurred in Mississippi."
Weighing the above, it appears that Georgia has the most substantial contacts with the parties and subject matter of this case; therefore, in Georgia lies the "center of gravity." For this reason, the Coahoma County court was obliged to apply Georgia law, and permit C.C. to invoke the privilege provided under O.C.G.A. § 24-9-27(a). We hold that C.C. could not be required to respond to the questions posed by Emmett's counsel in the deposition, and therefore the trial judge did not abuse his discretion in denying Emmett's Motion to Compel.

C.

Motion for Protective Order

II. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN GRANTING C.C.'S MOTION FOR PROTECTIVE ORDER.
While assigning as error the granting of C.C.'s Motion for Protective Order, Emmett devotes no section of his brief to this issue, advances no arguments concerning it, and cites no authority supporting his position. Parties have an affirmative duty to provide support for their assignments of error. Roberson v. State, 595 So.2d 1310, 1318 (Miss. 1992); R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990). The Court feels no compunction to address an assignment of error in the absence of such support. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 776 (Miss. 1992); Kelly v. State, 553 So.2d 517, 521 (Miss. 1989). Nevertheless, we have attempted to glean Emmett's probable arguments concerning this issue from arguments in other sections of his brief.
Rule 26(d) of M.R.C.P. reads in part:
Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending, or in the case of a deposition the court that issued a subpoena therefor, may make any order which justice requires to protect a *290 party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) that the discovery not be had;
* * * * * *
(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters.
The trial judge did not specify on which grounds he was granting C.C.'s Motion for Protective Order; he merely stated in his Order that C.C. was "not required to answer or further respond to any of the matters raised by the questions propounded to him in his deposition which he previously refused to answer." However, in his Order Denying Motion For Reconsideration, the judge stated that:
C.C. should have been protected from annoyance, embarrassment, oppression, undue burden and expense in this matter, and it was therefore necessary for this Court to issue a protective order under Rule 26(d) of the Mississippi Rules of Civil Procedure protecting him from further discovery and placing documents filed in this matter under seal.
Understandably, C.C. states that the information sought by Emmett's counsel in the deposition is potentially embarrassing to him. He submits that this potential embarrassment is the reason the Georgia court mandated that his deposition be sealed in its Order Appointing Commissioner. He also points out that the Georgia court refused to order Leslie to answer certain questions concerning her relationship with C.C., and stated that it would draw the "most negative inference" from her invocation of the privilege under O.C.G.A. 24-9-27(a).[6] Therefore, C.C. argues, Emmett already had sufficient evidence to establish whatever he deemed necessary from the questions Leslie refused to answer. Additionally, the same adverse inferences also could be drawn from C.C.'s refusal to answer. Presumably, C.C. would argue that these reasons, in addition to the fact that he was entitled to assert the Georgia privilege, constituted "good cause" under Rule 26(d) for the judge to issue the protective order.
Emmett argues that C.C.'s deposition was material, relevant, and necessary to the divorce proceedings. He also notes that the matters about which C.C. refused to testify were already part of the public record in Georgia, through the filed depositions of Leslie and Dr. Gerson. Presumably, Emmett would argue that for these reasons, and because C.C. was not entitled to invoke the Georgia privilege, there was not good cause under Rule 26(d) for the judge to grant the protective order.
This issue may be decided on either of two grounds. First, if C.C. was entitled to invoke the privilege under O.C.G.A. § 24-9-27, as discussed above, this alone would constitute "good cause" under M.R.C.P. 26(d) for a protective order. Alternatively, we refer to our standard of review concerning the findings of trial judges. This Court will reverse only where the finding of the trial judge are manifestly wrong or clearly erroneous. Estate of Lou Ella A. Lyles: Bennie A. Mothershed v. Brodie Howell, 615 So.2d 1186 (Miss. 1993); Lindsey v. Lindsey, 612 So.2d 376 (Miss. 1992); Faries v. Faries, 607 So.2d 1204 (Miss. 1992).[7] We find that in the case at bar, there was sufficient cause for the Coahoma County judge to limit the scope of discovery, and grant C.C. a protective order concerning sensitive matters concerning which Leslie had obtained a protective order in the Georgia court. Surely the judge was not manifestly wrong in finding that C.C. "should have been protected from annoyance, embarrassment, oppression, undue burden and expense." The grant of the Protective Order is affirmed.

*291 D.

Attorney's Fees

III. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION IN DENYING EMMETT BARNES' REQUEST FOR ATTORNEY'S FEES AND EXPENSES AND GRANTING C.C.'S REQUEST FOR ATTORNEY'S FEES AND EXPENSES.
Emmett argues that the trial court, in addition to erroneously denying his Motion to Compel, "imposed sanctions" on him and his attorney under M.R.C.P. 37 for bringing the motion. (The "sanctions" consisted of attorneys' fees in the amount of $4,279.00, and costs in the amount of $215.39). Emmett argues that the Motion to Compel was brought in good faith, pursuant to the Mississippi Rules of Civil Procedure, and that these "sanctions" should be reversed. He also contends that sanctions should be imposed against C.C. and his attorneys for their "willful failure to comply with discovery ... and their flagrant disregard for discovery rules."
C.C. argues that the attorneys' fees and costs were correctly assessed against Emmett because under M.R.C.P. 37(a)(4), such awards are mandatory against the losing party in a Motion to Compel.
Rule 37(a)(4) reads in part:

Award of Expenses of Motion. If the motion (to compel) is denied, the court shall, after opportunity for hearing, require the moving party of the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including reasonable attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expense unjust.
Emmett acknowledges that this Rule allows the court to require the losing party on a Motion to Compel to pay the opponent's attorney's fees. However, he submits that the purpose of Rule 37 is "not to impose monetary penalties every time a party loses a Motion to Compel." Yet that is precisely what the plain language of the Rule requires  provided, of course, that the court finds that the motion was not substantially justified, and that no other circumstances render such an award unjust.
This Court has not yet addressed an award of expenses under Rule 37(a)(4). However, the Fifth Circuit has addressed the award of attorneys' fees under Federal Rule of Civil Procedure 37(a)(4), identical to our Rule. In Merritt v. International Brotherhood of Boilermakers, 649 F.2d 1013 (5th Cir.1981), the court held that an award of attorney's fees under F.R.C.P. 37(a)(4) need not be premised on bad faith. Rather, it reached the "inescapable conclusion that an award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery ..." 649 F.2d 1013 at 1018.
The trial court's original Order Granting Deponent Motion For Protective Order, To Place Documents Under Seal, And Request For Attorneys' Fees and Expenses stated in part that Emmett's Motion to Compel "was not substantially justified," and that "there were no circumstances which would make an award of expenses to the prevailing party unjust." This Order was apparently rendered without the opportunity for a hearing as required by Rule 37. However, this omission was cured by the hearing held on Emmett's Motion for Reconsideration.[8] The Order denying the Motion for Reconsideration also states that Emmett's Motion to Compel was "not substantially justified and that an award of expenses to C.C. was just."
Since Emmett's Motion to Compel was correctly denied, the plain language of Rule 37(a)(4) seems to require that C.C.'s attorneys' fees and costs be assessed against Emmett. We are bound to uphold the judge's order, absent a showing that the judge abused his discretion, either in his finding that the Motion to Compel was not substantially justified, or that no circumstances rendered the award unjust. While this Court has not articulated a standard of review for decisions under Rule 37(a)(4), our standard of review of sanctions for discovery violations generally was stated in Cooper v. State Farm *292 Fire & Cas. Co., 568 So.2d 687, 693 (Miss. 1990):
Our standard for review is whether the trial court abused its discretion in its decision. This Court must decide whether the ... court could have entered the order which it did. Under this standard, this Court will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.
Cooper v. State Farm Fire & Cas. Co., 568 So.2d at 693 (cites omitted). See also Kilpatrick v. Mississippi Baptist Medical, 461 So.2d 765, 767 (Miss. 1984); Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss. 1979).
Because the award of attorney's fees against the losing party is mandatory under 37(a)(4), the only decision subject to this Court's review is the trial judge's finding that the Motion to Compel was not substantially justified, and that circumstances did not make the award unjust. We find no abuse of discretion in the judge's findings. The judge was aware that the Georgia court had denied Emmett's Motion to Compel Leslie to testify about her relationship with C.C. He was aware that the Georgia court could draw the most negative inference from Leslie's and C.C.'s refusals to testify. The judge could therefore conclude that C.C.'s testimony was unnecessary, and that Emmett's tenacious pursuit served only to annoy, embarrass, oppress and burden C.C. with expense. Considering these factors, the judge had sufficient grounds to find that the Motion to Compel was not substantially justified, and that circumstances did not make the award unjust.
Moreover, the judge could also conclude that because C.C. was entitled to assert the privilege under O.C.G.A. § 24-9-27, a motion to compel could not possibly be granted. Therefore, the award of attorney's fees under M.R.C.P. 37(a)(4) would be mandatory. Under either theory, the judge did not abuse his discretion in ordering Emmett, the losing party in a Motion to Compel, to pay C.C.'s attorney's fees and costs. The judge's award is affirmed.

E.

Motion To Place Documents Under Seal

IV. WHETHER C.C.'S DEPOSITION, THE SUBSTANCE OF WHICH IS MATERIAL TO THIS APPEAL AND ALREADY A MATTER OF PUBLIC RECORD, SHOULD BE PLACED UNDER SEAL.
Emmett argues that C.C.'s deposition should not have been placed under seal by the Coahoma trial court, and that this Court should discontinue the placement of the deposition under seal. He contends that
(the) deposition of C.C. was taken pursuant to the Mississippi Rules of Civil Procedure under the auspices of a Mississippi court and the Mississippi counsel is not bound by the decrees of a foreign jurisdiction which has no authority in Mississippi.
Emmett also argues that he could not challenge C.C.'s claim of privilege without communicating the questions which C.C. refused to answer; therefore, he did not violate the Georgia order placing the deposition under seal by including excerpts from the deposition to his Motion to Compel. That is, Emmett argues that he could not support his Motion to Compel answers to questions if he could not reveal those questions to the court. Finally, Emmett points out that the Georgia order, a matter of public record, addresses the subject of the relationship between Leslie and C.C. Therefore, he contends, "the substance of Mr. C.C.'s deposition is already a part of the public record, and no prejudice or embarrassment will befall Mr. C.C. by adding to the public record the questions posed to him by counsel and his unresponsiveness to said questions." Emmett further argues that C.C.'s deposition is "relevant and necessary to the understanding of these proceedings," and that because this case addresses issues of first impression, all documents which were a part of the proceeding should be made a part of the record and opinion of this Court.
C.C. argues that the trial court correctly determined that he was entitled to protection from annoyance, embarrassment, and oppression, and that it was therefore necessary to issue a protective order and place documents *293 filed in the case under seal. He argues that to unseal the documents now would resubject him to embarrassment, annoyance and oppression. He contends that the fact that the information is of public record in Georgia is of little or no consequence in determining whether the information should be made public in Mississippi.
C.C. also argues that while Emmett was entitled to present the contents of the deposition to the trial court, he need not have done so in a manner which made it part of the public record in Mississippi. He suggests that the motion could have been filed under seal, or Emmett could have filed for in camera inspection by the trial court. Finally, C.C. notes that a final decree has been entered in the divorce proceedings in Georgia, and therefore that information contained in the various documents filed in Mississippi is now moot.
Emmett's first argument, that the Mississippi court was not bound by the Georgia court's order placing the deposition under seal, is without merit. If, as Emmett suggests, the "decree of a foreign jurisdiction ... ha(d) no authority in Mississippi," then C.C.'s deposition could not have been taken at all.[9] While not absolutely bound to do so, this state's courts generally recognize the validity of out-of-state decrees. At the very least, the Coahoma court would recognize the Georgia court's order to seal C.C.'s deposition under the doctrine of comity. Moreover, if the Georgia court saw fit to place C.C.'s deposition under seal, thus protecting him from embarrassment, annoyance, and oppression, certainly this state would have at least as strong an interest in protecting one of its own citizens from such adversity.
This Court has not set out a standard for reviewing the sealing or unsealing of documents. We review the grant of C.C.'s Motion To Place Under Seal under the standard generally applied to decisions of the trial court below: whether the judge's ruling was manifestly wrong or constituted an abuse of discretion. We find no such error in the trial court's grant of C.C.'s Motion to Seal, since the judge had reason both to respect the Georgia court order, and to protect a Mississippi citizen from harassment.
Emmett's argument that he had no choice but to include excerpts from C.C.'s deposition in his Motion to Compel is equally unpersuasive. As C.C. points out, there were several procedures by which Emmett could have sought court review of C.C.'s refusal to answer deposition questions without making excerpts from the deposition public. For example, documents supporting the Motion to Compel could have been filed under seal. In fact, such documents probably should have been filed under seal, in accordance with the spirit and purpose of the Georgia court order sealing C.C.'s deposition.
Moreover, it is unclear why Emmett should seek to overturn the trial court's order placing documents under seal. His argument that keeping the documents under seal would, at this point, serve no purpose, since the matters are already public record, is  to say the least  disingenuous. It was Emmett's filing of the Motion to Compel, without taking measures to insure that his motion and any accompanying documents remain sealed, that caused portions of Emmett's deposition to become public record. That the matters of C.C.'s relationship with Leslie are already public record in Georgia (in the depositions of Emmett, Leslie and Dr. Gerson), is of no relevance to the question of whether documents concerning these matters should be under seal in Mississippi. Presumably, the protection C.C. seeks is most important in his home county and state.
In short, Emmett has advanced no persuasive argument that the documents filed in this action should not remain under seal. The trial court held that C.C. should be spared the embarrassment, annoyance and oppression that might ensue from rendering these documents public. We find no suggestion that such holding was in error, and affirm the trial court's ruling.
AFFIRMED.
*294 HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by PRATHER, P.J.
McRAE, Justice, dissenting:
Because no complaint had been filed and no action was pending in the Coahoma County Circuit Court, that court was without jurisdiction to award C.C. attorney fees and expenses pursuant to M.R.C.P. 37(a)(4). Before M.R.C.P. 37 is applicable, the prerequisite of M.R.C.P. 1 must be met; that is, a civil suit must have been filed. Accordingly, I dissent.
Our Rules of Civil Procedure govern "all suits of a civil nature." M.R.C.P. 1. In this case, there was no complaint or lawsuit filed. Rule 37(a)(1) further provides that application for an order compelling discovery must be made "to the court where the action is pending." There was no action involving these parties pending in the Coahoma Circuit Court; C.C.'s deposition was sought in conjunction with the Barnes' action for divorce in Fulton County, Georgia. Lacking jurisdiction to compel discovery in the Georgia case, the Coahoma County court was likewise without jurisdiction to impose sanctions upon Barnes or his attorneys.
Had Barnes utilized the still viable Bill of Discovery in chancery, the requirement of a civil suit would have been met and Rule 37 would have been applicable. The Bill or Complaint of Discovery
... is a distinct complaint in chancery by use of which disclosure may be required of material facts exclusively within the knowledge or possession of the defendant, and without such discovery, no full or adequate proof of them could be made... . Originally, its office was simply to aid a pending suit at law or one about to be brought, and the chancery part of the proceedings were usually deemed as concluded upon filing the full answer making the disclosures or producing the documents sought. In other words, the obtaining of discovery was the sole object and the end of the complaint. A complaint purely for discovery was not even set down for final hearing. When the discovery is obtained today buy a full answer, the ends of the case are met unless other relief is demanded. Normally, a complaint for discovery will be purely ancillary to a trial in some other case and ordinarily in some other forum.
Warner's Griffith, Mississippi Chancery Practice, § 427 p. 217 (1991). See also State Oil & Gas Board v. McGowan, 542 So.2d 244, 248-249 (Miss. 1989). Barnes should have filed a Bill of Discovery in chancery court, giving the court subject matter jurisdiction over the case. Once a complaint existed in that court, he then properly could have maintained a motion to compel discovery under Rule 37. Moreover, in addition to Rule 37(b)(4), the Bill of Discovery would allow either party also to seek sanctions pursuant to M.R.C.P. 11. Warner's Griffith, § 430 p. 220.
In the absence of subject matter jurisdiction and other such formalities, the circuit court was without authority to impose sanctions. Rule 37 was not applicable. Accordingly, I dissent.
PRATHER, P.J., joins this opinion.
NOTES
[1] It is unnecessary to recite the complete facts of this case. Suffice it to say that the omitted facts are of a personal and private nature.
[2] O.C.G.A. § 9-11-26, like M.R.C.P 26, concerns "general provisions regarding discovery." O.C.G.A. § 9-11-30, like M.R.C.P. 30, concerns "depositions under oral examination."
[3] This section concerns credibility and impeachment of witnesses.
[4] The Order provided in part that "all such discovery regarding defendant's alleged ... relationship with C.C... . shall be ordered sealed by this Court and counsel for the parties shall not make public said responses in regard to these areas at this time."
[5] On March 1, C.C. filed a motion requesting the Court to continue to hold all documents filed in this cause under seal. On March 27, 1991, this Court granted the motion, with the provision that the motion would be reconsidered along with the merits of the appeal.
[6] This is in accordance with Georgia law, which provides that "an inference against the witness' interest properly may be drawn by the fact finder from the witness' invocation of the privilege." Hathcock v. Hathcock, 249 Ga. 74, 287 S.E.2d 19, 21 (1982).
[7] In particular, the control of discovery is a matter committed to the discretion of the trial judge. Dawkins v. Redd Pest Control Co., Inc., 607 So.2d 1232, 1235 (Miss. 1992).
[8] As noted above, we do not have a transcript of the hearing on the Motion for Reconsideration.
[9] Moreover, Emmett's contention that the deposition was taken pursuant to Mississippi Rules of Civil Procedure is in error. As discussed above, the Order Appointing Commissioner specified that Georgia procedure would apply. In fact, Emmett's Notice To Take Deposition stated that C.C. would be examined under Georgia procedural rules.